UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.

DEVENKUMAR PATEL

          Defendant.

_____/

Case No.: 2:13-cr-20481

Honorable Victoria A. Roberts

**DEFENDANT'S RESPONSE TO GOVERNMENT'S OPPOSITION TO RETURN OF PROPERTY PURSUANT TO 18 U.S.C. §983(f) and Fed.R.Crim.P. 41(g)**

    Defendant Devenkumar Patel, by and through undersigned counsel, respectfully submits this Response to Government's Opposition to Return of Property pursuant to 18 U.S.C. §983(f) and Fed.R.Crim.P. 41(g).  The Defendant argues that his property should be returned as assets of a legitimate business and to avoid further substantial hardship.

1

**I.     Table of Contents**

Statement Of The Issues ………………………………………………………………….. 4
  II.    Procedural Background…………………………………………………………...  5
  III.   Mr. Patel is Operating Legitimate Healthcare Businesses……………………………5
  IV.    The Seizure of Money and Property has Substantially Harmed Mr. Patel's Businesses………………………..……………………………………………………….8
  V.     The Seizure of Money may Violate Mr. Patel's Sixth Amendment Rights…………..8
  VI.    Conclusion………………………………………………………………………….9

## **TABLE OF AUTHORITIES**

**Statutes**

18 U.S.C. §983(f)
Fed.R.Crim.P. 41(g)

**Cases**

*Luis v. United States,* Slip Opinion, 14-419 (March 30, 2016)

## **Statement of the Issues**

1. Whether the government seized the assets of a legitimate business run by Mr. Patel?

2. Whether the seizure of assets has created a substantial hardship to Mr. Patel and his businesses?

3. Whether the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment?

**II. Procedural Background**

On September 22, 2015, the government executed numerous search and seizure warrants on Mr. Patel's businesses and residence. Since that time, the government has not filed any criminal charges against Mr. Patel, his wife, or his companies, has not notified U.S. Probation of any allegations of criminal conduct pending Mr. Patel's release in the instant case, and has not been able to determine whether a fraud exists, or if one does, to what extent the fraud exists.

**III. Mr. Patel is Operating Legitimate Healthcare Businesses**

A.  Business Errors are Within the Margin of Error Allowed by the Healthcare Industry

Mr. Patel contends that he is operating a legitimate healthcare business and the statistical evidence supports this contention. Defense counsel and the government had a meeting to discuss the alleged violations in the second investigation in February 2016. During that meeting, the government announced four (4) areas of concern: 1) medications being billed but not dispensed; 2) double billing for Medicare Part A and Medicare Part D; 3) prescription medicines being filled for deceased patients, and; 4) return to stock and repackaging of blister packs.

The government alleged that they were looking at less than 100 prescriptions for prescription medications being billed but not dispensed; less than 100 prescriptions double billed to Medicare Part A and Medicare Part D, and; three (3) instances of prescription medicines being filled for deceased patients. It is important to note that during the time period that the government is investigating, January 2012 to December 2015, VPH Pharmacy filled over 1.3 million prescriptions. If the government is alleging that 100 prescriptions out of these 1.3 million prescriptions filled by VPH Pharmacy may be fraudulent or in error, that is less than a 1% error rate. This error rate is far below the national standard in the healthcare industry. For example, the Center for Medicare and Medicaid Services ("CMS") implemented the

Comprehensive Error Rate Testing (CERT) program to measure improper payments in the Medicare Fee-for-Service (FFS) program. CERT selects a stratified random sample of approximately 40,000 claims submitted to Part A/B Medicare Administrative Contractors (MACs) and Durable Medical Equipment MACs (DMACs) during each reporting period. This sample size allows CMS to calculate a national improper payment rate and contractor- and service-specific improper payment rates. The improper payment rate is not a "fraud rate," but is a measurement of payments that did not meet Medicare requirements. The fiscal year 2015 Medicare FFS program improper payment rate is 12.1 percent, representing $43.3 billion in improper payments, compared to the FY 2014 improper payment rate of 12.7 percent or $45.8 billion in improper payments. *See* www.cms.gov/Research-Statistics-Data-and-Systems/Monitoring-Programs/Medicare-FFS-Compliance-Programs/CERT/. The statistical billing error rate for claims submitted to the Medicare Program is exponentially greater than the error rate alleged by the government at VPH Pharmacy.

    An audit of VPH Pharmacy prescriptions revealed that 42 prescriptions, out of the approximately 1.3 million prescriptions processed by VPH Pharmacy, were billed and not dispensed however each of these prescriptions had been reversed by the pharmacy. The government also contends that the pharmacy is double billing for Medicare Part A and Medicare Part D, however these plans are often billed simultaneously in the long-term health industry in order to ensure that the patient is covered by insurance. A review of these claims revealed that the Medicare Part D claim was reversed by the pharmacy once the Medicare Part A was paid. Pertaining to the deceased patients being dispensed medication, it is the responsibility of the long term healthcare facility to ensure that the pharmacy is notified about the death of a patient. Finally, the government contends that Ame Patel is instructing the employees to commingle lot

designation numbers and re-dispense medications that are returned to stock, resulting in a safety issue but not a crime of economic benefit. The government is confusing the term "return to stock" with "overstock" at the pharmacy. The attached employee interviews reveal that neither Ame Patel nor Deven Patel have ordered employees to commingle lot numbers or mislabel any prescriptions. *See Attachment A.*

B. The Number of Errors is Completely Disproportionate to the Amount of Money Seized

Assuming, arguendo, that the government's estimate of less than 100 possibly fraudulent prescriptions is accurate for both the medications being billed and not disbursed issue and the double billing issue, the amount of money seized by the government is completely disproportionate to the alleged violations. The government seized approximately $562,091.46 in funds via currency and corporate accounts. The amount of money associated with any billing errors is substantially less than the amount seized by the government.

C. Mr. Patel Hired Compliance Counsel to Implement a Comprehensive Compliance Program

Mr. Patel hired Kim Sveska with Foley, Baron, Metzger and Juip Attorneys, LLP as compliance counsel to implement an effective and efficient compliance program at VPH Pharmacy. Mr. Sveska began his legal career in 1993 after 15 years of practicing pharmacy and has a great deal of experience in counseling pharmacies on regulatory issues, fraud waste and abuse, and compliance. Mr. Patel spent a great deal of time, money and energy implementing a compliance program in order to ensure compliance with state and federal laws. A review of recent audits by third party pharmacy benefit managers and the Michigan Board of Pharmacy corroborates that VPH Pharmacy is compliant with state and federal laws.

**IV.     The Seizure of Money and Property has Substantially Harmed Mr. Patel's Businesses**

Mr. Patel went into great detail in his original motion describing the substantial and irreparable harm to his businesses from the seizure of corporate bank accounts and pharmacy property.  We will not reiterate this information in the instant motion, but will supplement the Court with new information since the filing of the original motion.  Because of the assets frozen by the government and the loss of business, Mr. Patel is in default on several of his payment obligations, including corporate loans and pharmacy agreements.  Moreover, he is having difficulty meeting payroll obligations and other business responsibilities.  Although the government eludes to a number of other bank accounts owned by Mr. Patel, there was no substantial money in those bank accounts – otherwise the government would have seized those accounts as well.  Mr. Patel will provide any information requested by the Court regarding his finances for *in camera* review.

**V.     The Seizure of Money may Violate Mr. Patel's Sixth Amendment Rights**

Mr. Patel has been dealing with both civil and criminal allegations made by the government for the past five years, including the improper seizure of assets in 2009, ongoing cooperation with the government, new allegations of criminal misconduct, and yet another government seizure of assets.  Mr. Patel has spent a great deal of time and money for legal representation over the past five (5) years and continues to need to pay for representation.  The continued seizure of assets will soon begin to substantially impair Mr. Patel's ability to afford counsel of his choice.

On March 30, 2016, the Supreme Court held in *Luis v. United States* (Slip Opinion 14-419), that the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment. *See* Attachment B.  By the government's own admission, the government is only reviewing a small amount of prescriptions for fraud, thus, the majority of the

money seized by the government cannot be categorized as "tainted" funds but legitimate, untainted funds belonging to Mr. Patel and his companies. The continued seizure of these funds will substantially impede Mr. Patel's ability to retain counsel of choice, therefore, violating Mr. Patel's Sixth Amendment rights.

**VI. Conclusion**

For these reasons, and after consideration of prior motions and the testimony at the hearing, the Defendant's Motion to Return of Property pursuant to 18 U.S.C. §983(f) and Fed.R.Crim.P. 41(g) should be granted.

Respectfully Submitted,

*/s/ Anthony J. Calamunci*

Anthony Calumunci (P75076)
FISHERBROYLES LLP
6800 W. Central Ave., Suite E
Toledo, OH 43617
Email: anthony.calumunci@fisherbroyles.com
Direct: (419) 376-1776


*/s/ Brian E. Dickerson*

Brian E. Dickerson
FISHERBROYLES LLP
1415 Panther Lane Suite 315
Naples, FL 34109
Email: brian.dickerson@fisherbroyles.com
Direct: (239) 649.2702

**CERTIFICATE OF SERVICE**

I hereby CERTIFY that on April 13, 2016, I filed the foregoing with the Clerk of the Court under seal and sent a copy to the government via electronic mail.

Respectfully Submitted,

*/s/ Anthony J. Calamunci*

Anthony J. Calamunci (P75076)
FISHERBROYLES LLP
6800 W. Central Ave., Suite E
Toledo, OH 43617
Email: anthony.calamunci@fisherbroyles.com
Phone:  (419) 214-1050

Brian E. Dickerson
FISHERBROYLES LLP
1415 Panther Lane Suite 315
Naples, FL 34109
Email: brian.dickerson@fisherbroyles.com
Direct:  (239) 649.2702