UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

DEVENKUMAR PATEL,

    Petitioner.

_____

Case No.: 2:13-cr-20481

HON. VICTORIA A. ROBERTS

**GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION FOR POST-CONVICTION RELIEF**

The Government files this response to petitioner's 28 U.S.C. § 2255 motion for post-conviction relief and respectfully requests that this Court deny that motion.

# Table of Contents

I.   INTRODUCTION ................................................................................................ 1
II.  RELEVANT LAW .............................................................................................. 1
   A.   Guilty Pleas ................................................................................................ 1
   B.   28 U.S.C. § 2255 ........................................................................................ 3
   C.   Ineffective Assistance Of Counsel ............................................................ 4
III. THE PETITIONER'S MOTION IS LEGALLY INSUFFICIENT ............................. 5
IV.  THE PETITIONER'S GUILTY PLEA IS VALID ........................................................ 6
V.   THE PLEA AGREEMENT AND PLEA SOLILOQUY SATISFY THE SCIENTER ELEMENTS FOR PETITIONER'S CRIMES ..................................................................... 10
VI.  CONCLUSION ................................................................................................. 15

# Table of Authorities

**Cases**
*Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986) ............................................. 4
*Berry v. Mintzes*, 726 F.2d 1142, 1147 (6th Cir.1984) ........................................... 2, 3
*Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983) ....................................... 4
*Hill v. Lockhart*, 474 U.S. 52, 56-60 (1985) .............................................................. 5
*Hill v. United States*, 368 U.S. 424, 428 (1962) ........................................................ 3
*Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ............................................................ 3
*Strickland v. Washington*, 466 U.S. 668 (1984) ........................................................ 4
*United States v. Bennett*, 291 F.3d 888 (6th Cir. 2002) ................................... 2, 6, 10
*United States v. Broce*, 488 U.S. 563, 569 (1989) .................................................... 3
*United States v. Frady*, 456 U.S. 152, 167-69 (1982) ............................................... 4
*United States v. Lawson*, 780 F.2d 535, 542 (6th Cir. 1985) .................................. 11
*United States v. Mitchell,* 681 F.3d 867 (6th Cir. 2012) .......................................... 12
*United States v. Moore,* 423 U.S. 122 (1975) .......................................................... 11
*United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) .................................... 5
*United States v. Seelig,* 622 F.2d 207, 211–13 (6th Cir. 1980) ............................... 11
*United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir.1993) .................................. 3
*United States v. Tunning*, 69 F.3d 107, 112 (6th Cir. 1995) ..................................... 2

**Unpublished Cases**
*United States v. Byrd*, 220 F. App'x 421, 425-26 (6th Cir. 2007) ............................. 2
*United States v. Fata*, 650 F. App'x 260, 266 (6th Cir. 2016) .................................. 2

**Statutes**
28 U.S.C. § 2255 .................................................................................................. 3, 15

**Rules**
Fed. R. App. P. 4(b)(6) ................................................................................................ 2
Fed. R. Crim. P. 11(b)(3) ................................................................................ 1, 6, 10

**Other**
6th Circuit Pattern Criminal Jury Instruction 2.09 ..................................................... 11

## Statement of the Issues

1. Did the court comply with Federal Rule of Criminal Procedure 11(b)(2) and 11(b)(3) in finding that there was a factual basis for the guilty plea and that the guilty plea was voluntary?

2. Did the petitioner establish "cause and prejudice" for failing to raise the issues before sentencing or on direct appeal, and is this a case of "manifest injustice" sufficient to grant relief under 28 U.S.C. § 2255?

I.   INTRODUCTION

The petitioner focuses only on his guilty plea soliloquy in arguing that there was an insufficient factual basis to find him guilty of the two charged offenses. He ignores the plain words of Federal Rule of Criminal Procedure 11(b)(3) that the court must find a factual basis not at the time of the guilty plea, but ***"before entering judgment*** on a guilty plea." (emphasis added). He ignores Sixth Circuit precedent permitting a court to examine more than the defendant's own words at the guilty plea to determine if an adequate factual basis exists prior to entering final judgment. He also ignores his own statements indicating that his guilty plea was voluntary. This leads to the faulty claim that his guilty plea was inadequate.

The petitioner also fails to overcome the procedural requirements for § 2255 relief. He does not show "cause and prejudice" for failing to raise the claims in the district court or on direct appeal. He does not show "manifest injustice" in accepting his guilty pleas. Taken petitioner's conclusions compound into a weak attempt to avoid responsibility for crimes that he pled guilty to almost 3 years ago.

II.   RELEVANT LAW

   A.   **Guilty Pleas**

"Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. Rule of Crim. P. 11(b)(3). "A judgment or order is entered for purpose of this Rule 4(b) when it is entered on the criminal

1

docket." Fed. R. App. P. 4(b)(6).

A factual basis must be established before judgment is entered, but not necessarily at the plea hearing. *United States v. Bennett*, 291 F.3d 888 (6th Cir. 2002); *United States v. Tunning*, 69 F.3d 107, 112 (6th Cir. 1995) ("We recognize that the district court may determine the existence of the Rule 11(f) factual basis from a number of sources, including a statement on the record from the government prosecutors as well as a statement from the defendant.") (internal citations omitted); *United States v. Fata*, 650 F. App'x 260, 266 (6th Cir. 2016) ("Because a sufficient factual basis need be present only by the time of judgment, it is not necessary that the factual basis be established at the plea hearing. Judges may draw factual bases from many sources, including such post-plea sources as the defendant's PSR and testimony proffered at sentencing.") (unpublished); *United States v. Byrd*, 220 F. App'x 421, 425-26 (6th Cir. 2007) ("[T]he defendant's PSR, as well as testimony proffered at sentencing, may also be taken to establish the factual basis.") (unpublished).

A guilty plea is involuntary only when a defendant has "such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Berry v. Mintzes*, 726 F.2d 1142, 1147 (6th Cir.1984) (citations omitted). The sufficiency of a defendant's understanding of the proceedings is "based on a comprehensive examination of the totality of the circumstances…rather than on any

particular record inquiry." *Berry,* 726 F.2d at 1147 (internal quotation marks and citation omitted). Further, "a defendant who expressly represents in open court that his guilty plea is voluntary may not ordinarily repudiate his statements to the sentencing judge." *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir.1993) (internal quotation marks and citation omitted).

### B.      28 U.S.C. § 2255

Section 2255 applies to non-jurisdictional claims based on a federal statute or rule only if the claim alleges a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). "[A] voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). Thus, when a defendant files a Section 2255 motion to challenge the validity of a conviction pursuant to a guilty plea, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989).

A 28 U.S.C. § 2255 motion to vacate will not serve as a substitute for a direct appeal. Claims that could have been raised on direct appeal but were not will not be entertained in a § 2255 proceeding unless the petitioner demonstrates "cause" for his previous omission and prejudice resulting therefrom. *United States v. Frady*, 456

3

U.S. 152, 167-69 (1982).

"[T]here is no reason to conduct an evidentiary hearing [on a 28 U.S.C. § 2255 motion] to resolve a purely legal issue." *Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983). When the record of a plea hearing reveals that the defendant's "plea was knowing and voluntary," the district court need not conduct a hearing if the defendant later challenges the guilty plea in a 28 U.S.C. § 2255 proceeding. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). "[T]o allow indiscriminate hearings in federal post-conviction proceedings, whether for federal prisoners under 28 U.S.C. § 2255 or state prisoners under 28 U.S.C. §§ 2241-2254, would eliminate the chief virtues of the plea system—speed, economy, and finality." *Id.*

### C. Ineffective Assistance Of Counsel

Ineffective assistance of counsel claims must meet the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires the defendant to show both (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) that but for the error, the outcome would likely have been different. *See Strickland*, 466 U.S. at 687. Moreover, "[c]ounsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won…[T]he threshold issue is not whether [counsel] was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United*

4

*States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### III. THE PETITIONER'S MOTION IS LEGALLY INSUFFICIENT

The petitioner has not explained the reason for his failure to challenge his guilty plea on direct appeal -- which he voluntarily dismissed. (An explanation that he dismissed his appeal because of an appeal waiver provision in the plea agreement would not be "cause," but rather an admission that he is simply using § 2255 as a subterfuge to obtain the appeal rights that he bargained away in his plea agreement.) He is therefore precluded from pursuing these alleged violations of Federal Rule of Criminal Procedure 11(b) in a collateral attack.

The only question remaining is whether the alleged violations of Rule 11 constitute ineffective assistance of counsel. In the context of a guilty plea, the resulting prejudice must amount to a showing that, but for counsel's errors, the petitioner would not have pleaded guilty but would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-60 (1985).

The petitioner's multitude of lawyers were constitutionally effective. As explained below petitioner's lawyers negotiated a plea agreement and participated in a plea hearing that, in and of themselves, establish the requisite scienter elements. *See infra* at Section V. Petitioner maintained his guilty plea over the many months between his guilty plea and his sentencing. He was fully advised of the nature of the crimes, the penalties he faced and his trial rights. Dkt. No. 73 at 8-11. The Court

ultimately imposed a sentence of 16 months -- slightly below the Government's recommendation of 22 months. Petitioner's ultimate sentence was well below the 37-46 month guideline range agreed upon in the original plea agreement.

## IV. THE PETITIONER'S GUILTY PLEA IS VALID

Fed. R. Crim. P. 11(b)(3) states that "*[b]efore entering judgment on a guilty plea*, the court must determine that there is a factual basis for the plea." (emphasis added). Fed. R. Crim. P. 11(b)(3) requires, therefore, that a court determine that there is an adequate factual basis to support a defendant's guilty plea *prior to entering judgment.* The Sixth Circuit follows the plain language of this rule.

The defendant's plea soliloquy is but one part of the process to which a court can determine the adequacy of a guilty plea. In *United States v. Bennett*, 291 F.3d 888 (6th Cir. 2002) the Court stated that "a sufficient factual basis for [defendant's] guilty plea, therefore, must have been present by the time of sentencing, when judgment was entered, and not as [defendant] contends, at his guilty plea hearing." *Id.* at 894. The Court specifically held that a district court could look to the government's proffer, the factual basis in the plea agreement and the presentence investigation report. *Id.* at 896-97.

In this case, Pretrial Services prepared a presentence investigation report ("PSR") and the Government submitted an extensive sentencing memorandum laying out the extent of petitioner's crimes and his knowledge. The PSR states that

6

"[f]rom October of 2009 through June of 2010, the defendant…allowed the Southfield Medical Pharmacy to dispense a specialty compound topical cream known as "A1 Topical Cream."" *See* Presentence Investigation Report (March 14, 2014) at 4, 18.  The PSR confirms that petitioner was the owner of Southfield Pharmacy, was responsible for ensuring compliance with federal drug laws and "ordered pre-printed prescriptions for the topical cream with Dr. Mendiratta's name on the header." *Id.* Moreover, "agents were unable to find documentation…indicating that Dr. Mendiratta prescribed the "A1 Topical Cream." Additionally, Dr. Mendiratta reviewed and denied issuing the topical cream prescriptions dispensed under his name.  Therefore, [petitioner's pharmacy] unlawfully filled prescriptions for the topical cream." *Id.*  The pharmacy then "submitted reimbursement requests to insurance providers, including Blue Cross Blue Shield, for the topical cream." *Id.* at 18.  The PSR, therefore, confirms that petitioner had knowledge of and participated in Southfield Medical Pharmacy's illegal distribution of controlled drugs.

The Government's sentencing memorandum summarized and contained many DEA interview reports demonstrating that petitioner was knowledgeable about, controlled the operation of and benefited from the healthcare fraud scheme occurring at the pharmacies he owned.  Dkt. No. 61.  For example, petitioner, as owner of the pharmacies at issue, knowingly allowed thousands of fraudulent

compounded medication prescriptions to be billed and filled at his pharmacies. *Id.* at 9. In order to cover-up his fraudulent activity, petitioner caused preprinted prescriptions to be created and signatures of several physicians to be forged -- which the doctors confirmed. *Id.* at 9-11; Dkt. No. 90 at 31 (the Court stated, at the sentencing hearing, that "[i]t appears that Mr. Patel was definitely the force behind using pre-printed prescriptions with various doctor names."). The doctors, and one pharmacy employee, also confirmed that many of the preprinted prescriptions created by petitioner were presented to the physicians ***after*** the compounded drug was dispensed. *Id.* at 10. Petitioner also encouraged the waiver of copays for compounded drugs that patients did not need. *Id.* at 11. A doctor even confirmed that a fraudulent letter was created in his name that includes a compound formulation that he did not request -- at the direction of petitioner. *Id.* at 10. The total amount of questionable billings was over $4.7 million.[1] *Id.* at 14. Finally, as stressed in the Government's sentencing memorandum and at the sentencing hearing, the only person that benefited financially from the scheme was petitioner. *See, e.g., id.* at 5, 12; Dkt. No. 90 at 31-32 (the Court stated, at the sentencing hearing, that "[i]t appears that the financial benefit that was gained from this scheme went to Mr. Patel only.").

---

[1] The parties did, however, stipulate to a loss amount of $560,000.

The Government's sentencing memorandum and the PSR show that petitioner was in control of and directed the illegal activities occurring at his pharmacies. Indeed, the Court recognized petitioner's controlling role in his healthcare fraud scheme during the sentencing hearing.

> I cannot agree with the Defense' conclusion that this was negligent supervision or that it was a lapse in judgment…based on the evidence that the Government has put together, there is no way that all this stemmed from negligent supervision or any kind of lapse in judgment on the part of Mr. Patel…the Court doesn't disagree with any of the descriptions and the labels that the Government gives to Mr. Patel. Mastermind was a word used and I don't think that that was or is too strong a term to use to describe this scheme.

Dkt. No. 90 at 32.

This explicit finding by the court, amply supported by the entire record, fully satisfies the requirement of Federal Rule of Criminal Procedure 11(b)(3) that the court determine there is a factual basis for the plea. The Court entered final judgment on July 20, 2016. Dkt. No. 79. Moreover, as explained below, the petitioner's plea soliloquy and signed plea agreement also contain adequate facts to support his guilty pleas. *See infra* Section V.

The guilty plea was also voluntary -- petitioner admitted as much. Dkt. No. 73 at 13 (petitioner admitting that no one threatened or forced him to plead guilty). The Court agreed. *Id.* at 15-16 (the Court stated that petitioner understood his rights, was competent and "that no one is forcing him to enter into this Agreement.").

9

The petitioner argues in his bail relief reply motion (Dkt. No. 102) that the Government does not have "clean hands" and cannot belatedly supplement the factual basis to a guilty plea.² Dkt. No. 102 at 6-7. Petitioner states that "[t]he Government overlooks the fact that the Court made its findings at the conclusion of the plea hearing and not at sentencing" and goes on to imply that a guilty plea must be completed at the plea hearing. *Id.* at 6. Tellingly, the petitioner does not cite anything to support his position. That is because the Federal Rules of Criminal Procedure and Sixth Circuit case law are clear: the factual basis must be sufficient ***before entering judgment*** and the Court can look beyond the petitioner's plea soliloquy. *See, e.g.,* Fed. R. Crim. P. 11(b)(3); *United States v. Bennett*, 291 F.3d 888 (6th Cir. 2002).

### V. THE PLEA AGREEMENT AND PLEA SOLILOQUY SATISFY THE SCIENTER ELEMENTS FOR PETITIONER'S CRIMES

Petitioner argues that the Government has made a "backhanded concession" that the factual basis was inadequate at the plea hearing. Dkt. No. 102 at 8. Petitioner's accusation is not based in fact. The Government did not argue the sufficiency of the factual basis initially because the Court need not reach the issue

---

² Petitioner also argues that the "Government has apparently conceded that the factual basis for the plea as set forth in the Rule 11 Plea Agreement and the totality of the plea proceedings…was inadequate to support a finding of guilt." Dkt. No. 102 at 5-6. This is wrong. *See infra* Section V.

10

of the adequacy of petitioner's plea soliloquy itself -- and still does not have to. *See supra* Section IV. However, for the sake of completeness, the factual basis in the plea agreement and the petitioner's plea soliloquy, in and of themselves, are sufficient to satisfy the scienter or "knowledge" elements for petitioner's crimes.

Sixth Circuit law approves this definition of the term knowingly: "The word knowingly means that a defendant realized what he was doing and was aware of the nature of his conduct. It means that he did not act through ignorance, mistake or accident." *United States v. Lawson*, 780 F.2d 535, 542 (6th Cir. 1985). The law applicable to pharmacists requires that, in order to be found guilty, the government must "prove beyond a reasonable doubt that the drugs were distributed outside the usual course of professional practice." *United States v. Seelig,* 622 F.2d 207, 211–13 (6th Cir. 1980) (citations omitted). Licensed pharmacists are exempt from the provisions of the drug abuse statute when they dispense or prescribe controlled substances in "good faith" to patients in the regular course of professional practice, recognized and accepted in the United States. *Id.; see United States v. Moore,* 423 U.S. 122 (1975).

"Knowledge" can be based on "deliberate ignorance." 6th Circuit Pattern Criminal Jury Instruction 2.09: "No one can avoid responsibility for a crime by deliberately ignoring the obvious." If the petitioner deliberately ignored a high probability that his employees were fraudulently billing and dispensing controlled

11

substances without prescriptions, this indifference to his obligations would be sufficient to find that he acted "knowingly." *See United States v. Mitchell,* 681 F.3d 867 (6th Cir. 2012) (where a partner in a law firm was convicted of "knowingly" participating in a bribery scheme when, in violation of his ethical obligation to supervise the law firm, he avoided specific knowledge of the day-to-day operations of the bribery scheme).

In both the plea agreement and the petitioner's plea soliloquy, the petitioner admitted he was the owner of Southfield Pharmacy and responsible for his employees' compliance with state and federal law. Dkt. No. 53 at 2; Dkt. No. 73 at 13. Petitioner further admitted that his employees dispensed illegal controlled drugs from his pharmacies and billed insurance companies for those drugs. Petitioner then specifically stated that he "should have known of this unlawful activity" and that "[he] allowed Southfield Medical Pharmacy to bill and receive reimbursement for these [illegal controlled drugs]." Dkt. No. 73 at 13-15. The plea agreement also specifically states that "[d]uring the period October, 2009 through June 2010," petitioner exhibited "indifference to his obligation under the [Controlled Substance Act]." Dkt. No. 53 at 2. Attached to the plea agreement are the offense level worksheets showing a loss amount of "more than $1,000,000." *Id.* at 9. Moreover, the plea agreement and the Court recognized that petitioner's scheme was sophisticated. Dkt. No. 53 at 9; Dkt. No. 90 at 32 (the Court stated, at the sentencing

hearing, that "as part of the Rule 11 Plea Agreement, the Defendant agreed that the scheme was a sophisticated one and points were included for that and sophisticated scheme connotes something that was repetitive and coordinated and certainly this Court has described those things that made this a sophisticated scheme.").

Petitioner admitted that he was responsible for Southfield Pharmacy, should have known what was occurring at Southfield Pharmacy and that he was indifferent to his responsibilities under the Controlled Substance Act for 9 months (October 2009 – June 2010). This was sufficient to establish "knowledge" through deliberate ignorance. For the duration of the petitioner's indifference (9 months), he agreed that there was more than $1,000,000 of loss due to the billing of illegal controlled drugs from his pharmacies. Petitioner was not acting in good faith because a pharmacist acting in accordance with a standard of pharmacy practice generally recognized and accepted in the United States would have realized what was happening around him -- his pharmacies were filling and billing over $1,000,000 of illegal controlled drugs during a 9-month period. It is, therefore, reasonable to conclude -- from petitioner's own statements -- that he had knowledge of the illegal drug distribution and healthcare fraud at his pharmacies and was, in fact, directing such activity. Thus, petitioner's plea was valid because he knowingly committed healthcare fraud (18 U.S.C. § 1347(a)(1)) and illegal drug distribution (21 U.S.C. 842 (a)(1)) -- the very crimes for which he pled guilty.

13

Petitioner argues that he "repeatedly denied that [he] acted knowingly" in the plea agreement and plea soliloquy. Nothing could be further from the truth. Nowhere during the plea hearing or in the plea agreement did the petitioner unequivocally deny that he had knowledge of what was occurring at his pharmacy. Moreover, as explained above, the facts that petitioner did admit are sufficient to establish a valid guilty plea. At the very least, a reasonable person could infer knowledge from the facts that petitioner did admit.

Petitioner also argues that his pharmacies were compounding pharmacies near a "a small number of doctors" that prescribe ketamine cream. Dkt. No. 96 at 17-18. Based on these allegations, the petitioner concludes that "neither the number of prescriptions for the creme nor the fact that the prescriptions were written by a limited number of physicians, would give rise to any concerns by an experienced compounding pharmacist." *Id.* at 18. Petitioner cites to nothing and includes no expert affidavits to support his allegations. There is a simple explanation for petitioner's naked recitation of these allegations. ***It defies logic that a pharmacist responsible for ensuring compliance with state and federal laws had no knowledge of the filling and billing of over $1,000,000 worth of illegal controlled drugs over a 9-month period.***

Petitioner knew and directed the illegal activities at his pharmacies. All the evidence -- before the Court entered final judgment -- points directly at the

petitioner. The Court was correct in accepting the petitioner's guilty plea and sentencing him to prison.

## VI. CONCLUSION

The Government respectfully requests that the Court deny petitioner's motion for post-conviction relief.

        Respectfully submitted,

        BARBARA L. McQUADE
        United States Attorney

        s/*Wayne F. Pratt*
        Chief, Health Care Fraud Unit
        Assistant United States Attorney
        211 West Fort, Suite 2001
        Detroit, Michigan 48226
        (313) 226-9583
        Email: wayne.pratt@usdoj.gov

        /s/ *Michael S. Heesters*
        MICHAEL S. HEESTERS
        Assistant United States Attorney
        211 West Fort, Suite 2001
        Detroit, Michigan 48226
        (313) 226-9736
        Email: michael.heesters@usdoj.gov

Dated: December 15, 2016

## Certificate of Service

I hereby certify that on December 15, 2016, I caused a copy of the foregoing to be served on all counsel of record using the Court's ECF filing system.


/s/ *Michael S. Heesters*
MICHAEL S. HEESTERS
Assistant United States Attorney
211 West Fort, Suite 2001
Detroit, Michigan 48226
(313) 226-9736
Email:  michael.heesters@usdoj.gov